*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. G. SMITH, Minor.

UNPUBLISHED
October 19, 2023

No. 364399
Wayne Circuit Court
Family Division
LC No. 2004-432820-NA

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to ES pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent's home). We affirm.

## I. BACKGROUND FACTS

On September 11, 2019, petitioner filed a petition seeking temporary custody of ES because respondent did not have appropriate housing, abused cocaine, and failed to protect ES from neonatal cocaine exposure. The trial court authorized the petition, took jurisdiction of ES, and removed ES from respondent on November 4, 2019, after respondent admitted that he did not have suitable housing and struggled with drug abuse. ES was placed with a paternal cousin, Andrea Newsome, where he remained throughout the duration of the case. Almost three years later, on July 19, 2022, petitioner filed a supplemental petition seeking termination of respondent's parental rights on the basis that respondent failed to overcome his substance abuse issue.

At the trial, Tonya Currie, a foster care specialist, testified that, after multiple referrals, respondent finally completed a parenting class, but did not appear to benefit from it because he continued abusing drugs. Respondent completed a substance abuse counseling course in May 2020, but he did not appear to benefit from that counseling because his drug screens remained positive for cocaine. In the fall of 2022, respondent participated in substance abuse services, but he continued to test positive for cocaine. Respondent's therapist, Tracy Hollis, told Currie that Hollis did not know how respondent was still testing positive for cocaine because he seemed to be making improvements. Hollis said she knew respondent and claimed that he was not testing positive for drugs, but she did not provide any credible information to support her claim.

-1-

Respondent completed a month-long inpatient substance abuse service in January 2022, that he independently checked himself into—petitioner did not refer him to participate in the inpatient therapy. Prior to April 2022, respondent was required to do eight drug screens each month. Since April 2022, respondent was offered 32 drug screens, and 23 of those screens were positive for cocaine and benzoylecgonine. None of respondent's 23 positive drug screens were counted positive by default; respondent attended each of those screens and his test results were positive. Currie omitted the drug screens respondent participated in prior to April 2022, because of who the provider was that facilitated the screens.[1] When Currie confronted respondent about his positive screens, he denied using cocaine. Respondent's last drug screen prior to trial was November 19, 2022, and he tested positive for cocaine and benzoylecgonine.

Currie testified that respondent had appropriate housing and income through social security. Respondent visited ES on a weekly basis, amounting to approximately 32 visits since April 2022. Respondent visited ES every week during the three years that ES was in the temporary custody of Newsome. Respondent brought ES snacks, juice, and food during the visits. Currie opined that respondent's substance abuse inhibited his parenting ability.

Currie stated that ES was bonded to respondent, and described their relationship as being very close. ES was still placed with Newsome at the time of trial. Currie opined that the trial court should terminate respondent's parental rights because he was not benefiting from the services he was receiving. Currie did not believe additional time would allow respondent to benefit from the services. Currie opined that it was in ES's best interests to terminate respondent's parental rights, even though he was placed with a relative, because ES needed permanency and stability. Currie stated that Newsome was willing to adopt ES. Currie explained that the issue preventing respondent from being able to care for ES was respondent's positive drug screens. Respondent claimed he was taking additional drug screens on his own, and that those results were negative, but respondent did not provide proof of those allegedly negative screens to Currie. And Currie did not contact Jail Alternatives for Michigan (JAMS), the facility respondent claimed he was doing the drug screens at, to validate his claim.

Hollis testified that she helped respondent with his mental health issues and substance abuse, and discussed respondent's feelings about ES during their therapy sessions. Respondent had major depressive disorder and post-traumatic stress disorder. Respondent told Hollis that he performed drug testing at multiple facilities. Hollis opined that most of respondent's positive tests were incorrect because Hollis saw respondent go through great lengths to remain clean from drugs. Hollis said respondent even moved out of a building he was living in and became homeless for a while because the building was "drug-infested." Hollis testified that respondent would have contacted her and asked for help if he was having a drug problem. Hollis opined that respondent was not using drugs, was capable of parenting ES, and was a wonderful father. Hollis testified that she witnessed respondent interact with ES and believed the two had a loving relationship. Hollis explained that ES would get excited to see respondent during visits, and ES became sad when respondent left. Respondent did relapse in his drug use at one point, but he was honest about his relapse and checked himself into Sobriety House the same day. Hollis admitted that she had

---

[1] Currie did not state who the provider was or why screens from that provider needed to be omitted.

no qualifications to say the positive drug screens were inaccurate; rather, she merely based her opinion on what she knew about respondent and what he told her. Everything Hollis knew about respondent's drug use she learned through him self-reporting to her.

Respondent testified that he had been testing at JAMS twice a week prior to April 2022. However, from April 2022 until trial, respondent tested at Spectrum Family Child Services twice a week. Respondent claimed his drug screens came back negative from both facilities. Respondent testified that he relapsed a few times, but not enough times to justify the number of positive drug screens he had. Respondent agreed that ES's placement with Newsome was good for ES.

During closing argument, petitioner requested the trial court to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) because substance abuse was an issue in 2019, when ES became a ward of the court, and was still an issue in 2022, at the time of trial. Petitioner requested termination under MCL 712A.19b(3)(j) because respondent's failure to overcome his substance abuse issue created a reasonable likelihood that ES would be harmed if he was returned to respondent. Petitioner claimed it was in ES's best interests to terminate respondent's parental rights because ES needed permanency and stability. Petitioner argued that the bond ES had with respondent was insufficient to overcome the potential harm that would come to ES if he was exposed to respondent's substance abuse. Petitioner asked the trial court to find that it was in ES's best interests to terminate respondent's parental rights despite the fact that ES was in a relative placement at the time of trial.

The guardian ad litem echoed most of what petitioner stated in closing argument, but added that there was no evidence provided by respondent that contradicted his positive drug screens, apart from Hollis's opinion that respondent was not using drugs. The guardian ad litem argued that Hollis's opinion was insufficient to contradict the positive drug screens or even raise a genuine concern about the validity of those positive screens.

Respondent's attorney argued that the only issue weighing in favor of termination was respondent's substance abuse, but contended the trial court did not have sufficient evidence to find respondent's substance abuse merited termination, especially since there was conflicting testimony about whether respondent was using drugs and accurately testing positive. Respondent's attorney requested that the trial court give respondent more time to solidify his sobriety, and argued that petitioner had to bring more evidence about respondent's continued drug usage before termination would be proper in that regard.

The trial court found respondent maintained appropriate housing, obtained legal income, visited ES, and was bonded with ES. Further, respondent made sporadic progress on his substance abuse issue over the three years the case had been ongoing. But, the court noted, respondent lost his privilege to have unsupervised visits with ES when he relapsed with his drug use. Since April 2022, respondent participated in 32 drugs screens and 23 were positive for cocaine. The trial court emphasized that, despite respondent's therapist testifying that she believed respondent was not using drugs, the positive drug screens told a different, more reliable story.

The trial court found that petitioner made reasonable efforts to assist respondent with his substance abuse problem, which included providing respondent with drug screening and substance abuse treatment. And grounds for termination of respondent's parental rights existed under MCL

712A.19b(3)(c)(*i*) and (j) because respondent failed to overcome his substance abuse issue, which was present in 2019 when the original petition was filed, and because respondent's continued substance abuse made him unfit for unsupervised visits—ES could not be safely returned to respondent's care.

In finding it was in ES's best interests to terminate respondent's parental rights, the trial court expressly addressed the fact that ES's placement with Newsome weighed against termination. However, the trial court explained that postponing termination, as respondent requested, was likely just delaying the inevitable because respondent showed an inability to benefit from services and overcome his substance abuse issue. So, in light of that, the trial court found it was in ES's best interests to terminate respondent's parental rights. The trial court recognized respondent's efforts at developing and maintaining a bond with ES, but found that ES needed closure and terminating respondent's parental rights and allowing Newsome to adopt ES was in ES's best interests.

Following trial, the trial court issued an opinion and order detailing its findings. The trial court originally took jurisdiction pursuant to MCL 712A.2(b)(2). The issues relating to jurisdiction involved respondent's substance abuse and lack of housing. A service plan for respondent was entered on November 4, 2019. Respondent was required to complete parenting classes, substance abuse counseling, submit drug screens, and participate in psychological and psychiatric evaluations. Respondent completed the parenting classes, and a one-month substance abuse program in January 2022. Respondent continually participated in substance abuse services. Respondent maintained that he submitted negative drug screens through another screening service, but failed to provide proof of the alleged negative screens.

The trial court found continued jurisdiction under MCL 712A.2(b)(2) and that clear and convincing evidence existed for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j) in light of respondent's failure to overcome his substance abuse addiction. Respondent failed to rectify his substance abuse, which was the primary reason for respondent's original adjudication. Further, respondent's continued use of cocaine and benzoylecgonine would place ES at risk if ES was returned to respondent's care. The trial court reasoned that respondent's failure to overcome his substance abuse issue during the three years the case was open indicated that respondent was not going to be able to overcome his addiction within a reasonable amount of time given ES's young age. The counseling and therapy respondent received from petitioner for his substance abuse problem evidenced that petitioner made reasonable efforts to help respondent with his substance abuse.

The trial court also concluded that termination of respondent's parental rights was in ES's best interests because ES was young, required stability, permanency, and finality, and respondent was unable to provide ES with appropriate care because of respondent's ongoing substance abuse issue. The trial court expressly addressed ES's placement with his relative, Newsome, but maintained that it was in ES's best interests to terminate respondent's parental rights because no alternative plan short of termination would provide ES with the permanent stability he needed. The bond ES had with respondent was outweighed by the risk of reunification created by respondent's continued drug use. Therefore, the trial court terminated respondent's parental rights and this appeal followed.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Respondent first argues that petitioner failed to make reasonable efforts to supply respondent with the resources he needed to comply with his treatment plan. We disagree and conclude that the trial court did not plainly err by finding petitioner made reasonable efforts to help respondent reunify with ES before seeking termination of respondent's parental rights in light of the many referrals and services petitioner supplied to respondent.

In order to preserve an argument that the Department of Health and Human Services (DHHS) "failed to make reasonable efforts at reunification," the respondent must "object or indicate that the services provided to them were somehow inadequate . . . ." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted). "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *Id.* (quotation marks and citation omitted). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Id.* at 337. The window for challenging the adequacy of the efforts made by petitioner ends at reunification or when the trial court terminates a respondent's parental rights. *Id.* Here, respondent did not contest the adequacy of petitioner's efforts prior to termination of his parental rights. Accordingly, this issue is not preserved.

"[U]npreserved issues are reviewed for plain error affecting substantial rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted).[2] "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (quotation marks and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* (quotation marks and citation omitted).

DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id.* (quotation marks and citation omitted). "In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *Id.* (quotation marks and citations omitted). "[T]he Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 259 (quotation marks and citation omitted). "Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *Id.* (quotation marks and citations omitted).

---

[2] Though this Court recently determined that the plain-error test does not apply in civil cases, that decision is not applicable to termination of parental rights cases. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090), p 5 n 3.

In *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014), the respondent challenged the trial court's finding that reasonable efforts toward reunification had been made. The respondent was provided with a "multitude of intensive services," but made little progress and failed to internalize what she had been taught. *Id*. A panel of this Court held that the trial court did not clearly err by finding reasonable efforts had been made toward reunification. *Id*. at 711-712. The panel emphasized that a respondent must not only participate in services, but must benefit from them in order to progress toward reunification. *Id*. at 711.

Respondent argues that he was not provided with services to help him address and remedy his substance abuse issue, but the evidence in the record contradicts respondent's claim. After ES was removed, the trial court ordered petitioner to provide respondent with a substance abuse evaluation and therapy, drug screens, parenting classes, as well as psychological and psychiatric evaluations. Respondent received multiple referrals for a parenting class and completed one parenting class. Respondent regularly participated in substance abuse services. Prior to April 2022, respondent was participating in drug screening two times a week at JAMS. From April 2022 until December 2022 respondent was offered 32 drug screens. Respondent was also provided with a therapist, Hollis, who spoke with him about his mental health issues, substance abuse, and relationship with ES.

The trial court found petitioner made reasonable efforts to assist respondent with his substance abuse issue, including providing respondent with drug screening and substance abuse treatment. This finding was not clearly erroneous because, like the respondent in *TK*, the record reveals respondent was provided with many services designed to assist respondent in overcoming his substance abuse and achieving reunification with ES. See *id*. (holding reasonable efforts were made where the petitioner provided the respondent with multiple services to assist respondent with reunification). Respondent's failure to benefit from the services and progress toward reunification did not negate the fact that reasonable efforts were made. See *id*. (holding a respondent's failure to benefit from the services provided by DHHS does not prove DHHS failed to make reasonable efforts).

Though the trial court heard testimony from Hollis that she believed most of respondent's positive drug tests were inaccurate, it found respondent was consistently testing positive for drugs, and terminated his parental rights on that basis. The trial court specifically stated that it found respondent's positive drug screens more persuasive than Hollis's testimony opining that respondent had not been using drugs. "[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016) (quotation marks and citation omitted). "It is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). We conclude that, based on the evidence presented, the trial court did not clearly err by finding respondent was continually using drugs, especially in light of the fact that Hollis only based her opinion on what respondent told her about his drug use. Accordingly, in the absence of evidence demonstrating that finding was clearly erroneous, we will not disturb the trial court's finding that respondent continually tested positive for cocaine and benzoylecgonine, especially from April 2022 through December 2022.

Because petitioner outlined a service plan that detailed the steps it and respondent needed to take to achieve reunification, and petitioner provided respondent with many services to assist

him in rectifying the issues which led to ES's removal, we conclude the trial court did not clearly err by finding reasonable efforts toward reunification were made. See *Sanborn*, 337 Mich App at 259.

Respondent claims petitioner failed to determine whether respondent's 23 positive drug screens were done at Averhealth—a testing facility respondent claims DHHS no longer uses because it produced false-positive drug tests—thereby evidencing that petitioner failed to make reasonable efforts to reunify respondent and ES. However, Currie testified at the February 1, 2022 dispositional review hearing that respondent was not getting drug screens at Averhealth. Since petitioner presented Currie's testimony that respondent was not testing at Averhealth, this allegation of error is meritless. Moreover, respondent did not allege that Spectrum Family Child Services, where he was testing twice a week from April 2022 until December 2022, generated false-positive drug screens. And respondent admitted he relapsed a couple times during the duration of this case. Therefore, even if the testing facility respondent was using prior to April 2022 generated false-positive results, there was sufficient evidence from respondent and Spectrum Family Child Services to substantiate the trial court's finding that respondent failed to overcome his substance abuse issue.

Respondent also alleges that he should have received specialized services to help him remedy his substance abuse issue, but respondent does not provide any proof that he was entitled to specialized services that extended beyond the ones he received, which included regular counseling with a mental health therapist. Since respondent failed to substantiate his claim that he was entitled to specialized services, we reject this argument.

## B. STATUTORY GROUNDS

Respondent next contends that termination of his parental rights was improper because he substantially complied with his treatment plan, and the record was devoid of evidence suggesting respondent could not provide proper care and custody to ES within a reasonable amount of time. We disagree and conclude that the trial court did not clearly err when it found statutory grounds for termination of respondent's parental rights existed under MCL 712A.19b(3)(c)(*i*) and (j) because the evidence established that respondent was unable to stop abusing drugs and he did not show that he could safely care for ES.

A trial court's finding that a statutory ground for termination has been proved by clear and convincing evidence is reviewed for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (internal quotation marks and citations omitted).

Parents have a "fundamental right to direct the care, custody, and control" of their children. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Pursuant to MCL 712A.19b(3)(c)(*i*), a court may terminate parental rights if the respondent was in a proceeding pursuant to this chapter, "182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence,

finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

Respondent was given three years to correct the issues which led to ES's removal. By December 2022 respondent had obtained suitable housing, but failed to overcome his substance abuse issue. First, far more than 182 days had passed between the issuance of the initial dispositional order removing ES from respondent, and the trial court's termination of respondent's parental rights. Second, the trial court did not clearly err by finding respondent's substance abuse—a condition that led to the adjudication—continued to exist. In May 2020 respondent completed a substance abuse counseling course but he did not appear to benefit from it. Respondent was still participating in substance abuse services in fall 2022, but he continually tested positive for cocaine and benzoylecgonine. Between April 2022 and December 2022, respondent participated in 32 drug screens and 23 were positive for cocaine and benzoylecgonine. This evidence demonstrated that respondent did not rectify his substance abuse issue during the three years he was given. Therefore, the trial court did not clearly err in finding one of the conditions that led to the adjudication continued to exist.

Finally, in light of the long duration of this case, we conclude that the trial court did not clearly err in finding respondent was unlikely to rectify his substance abuse issue within a reasonable amount of time considering ES's age. Though respondent participated in many substance abuse services, he failed to benefit from the services. Attending the services alone was insufficient to indicate respondent was making progress with his substance abuse treatment. See *Sanborn*, 337 Mich App at 274 (holding that mere completion of services is not the same as overcoming the barrier in place). Nothing in the record indicated there was a reasonable probability that respondent would rectify his substance abuse issue within a reasonable amount of time, especially after failing to do so for three years. See *In re White*, 303 Mich App 701, 712; 846 NW2d 61 (2014) (holding that the respondent would likely not be able to rectify the reasons that led to the adjudication because she failed to do so during the two-year period she was given). Currie testified that, in light of how long respondent had been trying to overcome his substance abuse issue, giving respondent additional time to overcome his substance abuse issue would not make a difference. Further, Currie opined that respondent's parental rights should be terminated, in part, because ES needed permanency and stability. Therefore, the trial court did not clearly err in finding a ground for termination existed under MCL 712A.19b(3)(c)(*i*).

Pursuant to MCL 712A.19b(3)(j), a court may terminate parental rights if it finds clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Exhibiting behavior that would put a child at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j). *White*, 303 Mich App at 713. "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

The trial court did not clearly err by finding a statutory ground to terminate respondent's parental rights existed under MCL 712A.19b(3)(j) because, as discussed above, respondent failed to comply with the terms of his treatment plan. See *id*. (holding that failure to comply with a service plan is evidence that the child will be harmed if they are returned to the parent's home).

Concluding that there was a reasonable likelihood ES would be harmed if returned to respondent's home was also not clearly erroneous because of respondent's repeated drug use. The use of powerful drugs, like cocaine and benzoylecgonine, could debilitate a caregiver from providing proper care to a child, especially one who is only three years old, like ES. See *id*. at 713 (holding that exhibiting behavior that would put the children at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j)). Respondent lost the privilege of having unsupervised visits with ES because his drug use caused him to exhibit inadequate parenting skills. For these reasons, we conclude the trial court did not clearly err by finding that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(j).

Respondent contends that the time COVID-19 was restricting the available substance-abuse services should not be counted against him. However, respondent failed to identify any services he lacked during the duration of the COVID-19 pandemic, or provide proof that he was not obtaining services during that time. In fact, the record indicates respondent was receiving regular drug-abuse treatment throughout the duration of this case. Therefore, this claim is without merit.

Finally, respondent argues that the trial court's termination of his parental rights was clearly erroneous because there was no proof in the record that respondent could not provide proper care and custody to ES, or that respondent was unable to comply with his treatment plan. However, as noted already, respondent continued to struggle with drug abuse after receiving substance-abuse treatment and services for three years. It was respondent's repeated drug abuse that led to ES being removed from him. Additionally, Currie testified that respondent's drug abuse made him an unfit parent, and that is also why respondent lost the privilege of having unsupervised visits with ES. Accordingly, the trial court did not clearly err by finding respondent's repeated drug use rendered him unfit to provide proper care and custody to ES, creating a reasonable likelihood that ES would be harmed if returned to respondent.

## C. BEST INTERESTS

Respondent next claims that the trial court clearly erred by finding termination was in ES's best interests because it failed to consider the wide array of best-interests factors that are crucial to a best-interests analysis. We disagree and conclude that the trial court did not clearly err when it found that it was in ES's best interests to terminate respondent's parental rights because respondent failed to overcome his substance abuse problem, which rendered him unfit to care for ES.

We review a "trial court's determination regarding the children's best interests" for clear error. *White*, 303 Mich App at 713. Clear error exists when the reviewing court has a firm and definite conviction that a mistake was made. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted). The trial court should consider all of the evidence when determining whether it

is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019).

The trial court found it was in ES's best interests to terminate respondent's parental rights because of respondent's substance abuse issue. The trial court recognized respondent's efforts at developing and maintaining a bond with ES, but concluded ES needed closure and finality, which respondent could not give because of his continued substance abuse. The trial court's analysis of these factors shows it did consider various best-interests factors, contrary to respondent's claim. As discussed earlier, the trial court did not clearly err in finding respondent failed to overcome his substance abuse issue during the three years this case was pending in the trial court. Respondent's failure to comply with his treatment plan and substance abuse evidenced that it was in ES's best interests to terminate respondent's parental rights. See *id*. (holding a respondent's history of substance abuse suggests it would be in the child's best interests to terminate the respondent's parental rights); see also *White*, 303 Mich App at 713 (holding a respondent's failure to comply with his or her treatment plan suggests it would be in the child's best interests to terminate the respondent's parental rights).

Respondent's drug abuse was so out of control that he checked himself into an inpatient treatment facility less than one year prior to the trial court's termination of respondent's parental rights. Respondent participated in inpatient treatment two different times. Respondent's drug abuse affected his ability to care for ES, as evidenced by the trial court terminating respondent's unsupervised visits with ES when respondent relapsed with his drug abuse. Further, Currie testified that respondent's substance abuse negatively affected his ability to parent ES. Though respondent was bonded to ES, that does not mean it was in ES's best interests to remain with respondent. Respondent needed to do more than develop a bond with ES; respondent needed to provide him with a safe environment, stability, and appropriate care. See *White*, 303 Mich App at 713. Respondent showed himself unable to provide those things to ES because of his continued drug abuse.

A child's placement with a relative weighs against termination of parental rights. *In re Mason*, 486 Mich at 164. The trial court acknowledged ES's placement with his relative, but found the need to provide ES with stability and permanency outweighed the fact that he was placed with a relative, tipping the scales toward termination. The trial court found respondent's continued drug abuse eliminated the chance that any alternative plan short of termination would provide ES with the permanence and stability he needed. Additionally, ES was doing well in his placement with Newsome, and Newsome was willing to adopt ES. See *White*, 303 Mich App at 714 (holding that the possibility of adoption is a factor to consider in a best-interests analysis). Currie opined that ES's placement with Newsome was a "sufficient" placement for ES. Even respondent agreed ES's

-10-

placement with Newsome was good for ES. Accordingly, we conclude that the trial court did not clearly err by finding it was in ES's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel